Case number 22-5071. I.M. Appellant v. United States Customs and Border Protection, et al. Mr. Deutner for the appellant. Mr. Ward for the appellate. Good morning, Mr. Deutner. Good morning. Good morning, Congress. This case is about the Appointments Clause, one of the significant structural safeguards of our constitutional scheme. Appellant I.M. brought a claim under 8 U.S.C. 1252e2b alleging that the Appointments Clause restricts the issuance of expedited removal orders to appointed officers and that because no appointed officer ordered him removed, he was not removed. The district court dismissed the case because it believes Section 1252e2 has an implicit custodial requirement. That was incorrect as well as slaying the day. The court then made a further error by failing to consider I.M.'s alternative argument that if there were a custodial requirement in 1252e2, it would be satisfied by the government's obstruction of his ability to buy a while in custody. Mr. Deutner, why isn't the first argument ruled out by the limited jurisdiction we have with respect to review of these decisions? The first argument you mean in terms of the Appointments Clause? Yes. So e2b gives jurisdiction over whether a petitioner was ordered removed. As this court said in Noel Canning and a putative order issued in violation of the Appointments Clause is void ab initio. It's a no that never had any legal effect. But our jurisdiction is specifically limited to certain claims. It's not one of them. But yes, Mr. Deutner was ordered removed. Because no appointed officer ever ordered I.M. removed, he was not ordered removed. And the court was removed, but not by an appropriate officer. Excuse me? He was literally ordered removed, but not by an authorized officer. No, Your Honor, the government presents the question as whether a piece of paper was handed out by somebody with the position of immigration officer. And that's simply not the operative question. The operative question is whether the United States or the person moved. The United States can only act in this capacity if I.M.'s merits claim is correct through an appointed officer. We would, you know, point to the Dugdale case as we discussed as a good example of how this works. There's no question the government handed the petitioner in that case a piece of paper. And that piece of paper purported to remove him. However, the piece of paper had not been issued by a supervisor as required by regulation. The court said that arguably goes to whether or not the petitioner was in fact ordered removed. And therefore, we have jurisdiction to consider it. It is certainly a narrow head of jurisdiction, but it goes to whether or not the United States ordered the person removed. What about E5, the scope of inquiry, right, which says that in determining whether an alien has been ordered removed under 1255B1, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. That's correct, Your Honor. We say that we would argue as we explain that this there was an order was not in fact issued. The court in Ryder just a year before I.R.I. was enacted, explained that a putative order issued in violation of the Appointments Clause is not valid de facto. De facto, there is no order that can have effect. And so, you know, we believe that that's what in fact issued. Judge Cooper, in explaining the difference between his Dugdale and PAM decisions, one of which he found ordered removed to be properly invoked and one which he found it wasn't, explained that his petitioners must raise the claim that their removal orders were, as a matter of law, not issued. That's exactly what I.R.I. is arguing here. To the government's argument that this actually should have been brought under 1252E3, we would disagree. First off, I.R.I. is not challenging the constitutionality of the statute or any regulation or written guidance or policy directive implementing it. He's challenging whether he himself was ordered removed. And there's nothing in E3 that takes away from the jurisdictional grant in E2. That's clear because there is naturally some overlap between some of those subjects. For example, the DHS has issued regulations about how to determine whether somebody who claims that they are not an alien or claims they have received asylee or refugee status is to be adjudicated. Those could have been challenged under 1252E3, but the fact that they could have been challenged under 1252E3 doesn't take away from the grants of jurisdiction in 1252E2A and E2C. Thus, the government's argument that somehow there's an unstated limit on 1252E2B is simply incorrect. And of course, your Honor. Mr. Dugganer, wouldn't I.R.I. have filed his habeas petition while he was in custody? I mean, the arguments in the blue brief focus a lot on the fact that the removal order wasn't given to him until he was essentially out of custody and on his way back to his home country. But why was the removal order necessary in order to seek habeas? I don't understand that. I mean, he was, in fact, in custody. And so could have presumably filed a habeas petition while in custody. I'm not sure what the removal order, how that affects, you know, at least, you know, his entitlement or jurisdiction for habeas. And I.R.I. wasn't challenging his custody. He's not arguing that an appointed officer is necessary to detain somebody or anything of the sort, nothing short of issuing the removal order itself. His argument is that no appointed officer were removed. He said there was no violation. Isn't it always the case? It's not. I don't know if it's always the case or not in field offices around the country. There are some people who are appointed. There are some people who are not. You know, this we're not purporting to say this is something that is unique to I.R.I. by any stretch, but I don't know that this is the case for everybody. What about the practice around the country, even in this office, subject office, with respect to when the order is handed to the deportee? Yeah, we know that to be a practice. We've been told, of course, that to be a practice in the Chicago field office operating out of O'Hare. We don't know whether it's the case in other offices, but certainly, you know, that goes to this extraordinary circumstances question and whether or not it was in any way possible to file a claim before I.R.I. was released from custody. And this also overlaps the question of whether there's a that happens to everybody in O'Hare. It's a fair question. Extraordinary circumstance is an unfortunate name for the doctrine of constructive. Whether it's an unfortunate doctrine or not is a separate question. Of course, the government hasn't challenged the doctrine here. It hasn't denied that that doctrine is correctly stated by other courts, although, of course, this court hasn't reached the question. But the government hasn't disputed that if the government obstructed him from filing, then that could satisfy the doctrine. The reason that I say the extraordinary circumstances name is a little unfortunate is because, of course, the government can't do something in every case with the intention of manipulating and thwarting jurisdiction and get away with it just because it does it so many times. If the conduct of what to hear, and I'm sorry, it's extreme circumstances, not extraordinary circumstances. If the conduct here was extreme, it's extreme with reference to I.M.'s ability to file rather than how frequently the government does it. But I think this overlaps significantly with the question of whether there's a custodial requirement to begin with, because Congress did intend that people would be removed immediately upon issuance of a expedited removal order. It intended for everybody who doesn't assert a fear of persecution for them to be out the door right away, turned around the next plane, or if they're in a car on foot, turned right around the border. And so Congress intended for there not to be custody. And yet we also know Congress intended for there to be jurisdiction over claims in E2. And so it doesn't seem like it could have been Congress's intent to have a custodial requirement here. That also tracks with the text of the every other habeas statute we're aware of. There is no reference to custody whatsoever. Even more pointedly, there is no ability to seek or obtain a writ of habeas corpus. Congress? Judge Rauch? E2 seems to presuppose that there is some habeas corpus proceeding already. I mean, it doesn't read naturally like a separate grant of habeas jurisdiction. It seems to be referring to a habeas corpus proceeding that would be under, say, 2241. I don't believe that's correct. And, you know, for a couple reasons. Why would you read it as an independent grant of habeas? I mean, it says, you know, that a judicial review of any determination made under Section 1225b1 of this title is available in habeas corpus proceedings and then has to be limited to the three grants. Yes, and so I would give a few different textual reasons why that doesn't refer to the general federal habeas statute in Chapter 153. The first is contrasting, you know, what Your Honor just read in 1252e2 with 1252a1, which is the overall provision giving authority to consider petitions for review. 1252a1 specifically says judicial review of a final order of removal is governed only by Chapter 158 of Title 28, except as provided below. That's how Congress cross-references other statutes, when it means to incorporate the, especially jurisdictional, but when it means to incorporate provisions of another statute. Congress did no such thing in e2, and that difference has to be significant. We, of course, take, you know, your point, Judge Rao, and the government's point that Congress meant something when it said habeas corpus proceedings. But what it meant was proceedings, the form of the proceedings. Habeas corpus proceedings, as is well explained in the O'Brien case we cite in our reply brief, follow a completely different sequence and procedural structure than ordinary civil actions. Just to give a couple examples, Rule 12 generally doesn't apply, by and large, in habeas proceedings. The government doesn't need to respond to a petition at all unless the district court reviews it first, declines to dismiss it sua sponte, which is instructed to do it, finds no basis for relief, and only then orders the government to respond. Similarly, discovery. In an ordinary civil action, of course, parties move for discovery if there's no stay or not move, but serve discovery requests on the other party, and they have to respond to them unless they move for protective order. In habeas corpus proceedings, no discovery can be served unless submitted to the court ahead of time and explicitly authorized for each specific request that's going to be served. So when Congress uses the phrase habeas corpus proceedings without authorizing the grant of a writ of habeas corpus, without referencing the general federal habeas statute, and in a context that suggests it knew that some of the challenges it was authorizing were going to have to come after an order, after the person was removed, I think it makes the most sense to read it as not having that kind of custodial requirement. And to the extent... Do you think E2 is a separate grant of jurisdiction? I do read it that way, Your Honor, yes. That is the only provision establishing how final orders of expedited removal can be reviewed. And so, yes, I do read that as a grant of um... I'm going to have to find the specific provision earlier in the statute. I'm not just slipping through it now. I'm not sure which one it says that no petition can be brought except as stated in E. But, you know, that is implicitly authorizing. It's taking away any other field of jurisdiction and granting jurisdiction in this in as stated in E2. Do you think the exception to a jurisdiction stripping provision is itself a grant of jurisdiction? Excuse me? So the exception to the jurisdiction stripping provision is itself a grant of jurisdiction? Yes, I would say that, Your Honor. And I think E3 is another way of understanding this. E3, just like E2, says judicial review of determinations under Section 1225B of this title and its implementation is available in an action instituted in DDC. That's not saying that if you have an action under some other head of jurisdiction, you can also bring these claims. That's saying that courts can hear these claims in an action to bring only these claims. That's exactly the same thing that E2 is doing. I would also point to the extent that this is ambiguous. Of course, various hands of construction require it to be construed in IM's favor. And the government, frankly, had it right the first time. The government in multiple briefs in multiple courts has previously argued that there is no custodial requirement. The government is, of course, this exact same statute without amendment previously meant there was no custodial requirement. Now, unambiguously, has a custodial requirement. So at a minimum, the statute is ambiguous on this issue. And then you get to various canons of construction. The canon that jurisdiction stripping provisions are read narrowly, the canon that ambiguous immigration statutes are construed against the federal government, and the canon of constitutional avoidance. You're not relying on the presumption of reviewability. Excuse me? The presumption of reviewability. I would rather put it as the presumption that jurisdiction strap stripping statutes are construed narrowly, even when and when they include exceptions to jurisdiction stripping, that those are given their full force. So I would put that a little bit differently. And again, presumption of reviewability to be a very strange fit with the jurisdiction stripping statute. It is, yes and no. I mean, certainly there's no question Congress intended to strip jurisdiction of many claims. There's also equally no question that Congress did intend there to be jurisdiction over the claims in E2. The Supreme Court addressed this, not with E2 in particular, but about IRIRA in Poussaint v. Holder. It said many provisions of IRIRA were aimed at protecting from court review, from court review exercises of the executive's discretion. But no law pursues its purpose at all costs. And the textual limitations upon a law's scope are no less a part of its purpose. There is no question Congress wanted E2 to be usable. And in the vast majority of cases, given Congress's overall intent to get people out of the country without judicial review to, in every case, avoid having people released into the interior, if at all possible. It wanted to get judicial review out of the way of removal. It wanted to cut down on stays of removal so judicial review could proceed. And so it had to want habeas to proceed on claims related to a removal order after the removal order was issued, at which point it expected people to be out of custody. So we think the text and the intent of the statute both point in this direction, even before you get to the canon, which we believe to be dispositive of the court gets that far. I know I'm over my time. If there are any other issues, I'd be happy to address them. Thank you, Mr. And I reserve two minutes. Good morning, Mr. Ward. Good morning. May I please support Brian Ward on behalf. Congress, the court should affirm the decision of the district court finding there is no jurisdiction over the habeas petition that issue. The tax structure and history of section 1225, which sets out the removal process, and section 1252, all support the conclusion first that Congress didn't intend to grant jurisdiction in section 1252E2 for a habeas petition brought by a petitioner who's already been removed, at which point there's no longer any detention to challenge. And even if the court doesn't agree with that, I think it's clear from the statutory text and the way the statutory structure is set up that Congress clearly didn't intend to provide jurisdiction in section 1252E2 for an individual to challenge the process or the authority by which. So in section 1225 itself, 1225B, you have Congress saying plainly that unless an individual can raise and sign a claim, they should be removed without any further hearing or review. And then in section 1252A2A, you have Congress setting out a near universal limit on jurisdiction to raise challenges related to the expedited removal process, saying explicitly that unless Congress reserved or authorized jurisdiction under section 1252E2 or E3, and notwithstanding any other provision of law, there should be no jurisdiction for any court to hear a claim arising from or related to an expedited removal order. So E2 allows you to bring a challenge to whether an order was actually issued? It does not. No. Well, it allows you to challenge the fact of whether you received an order. Whether you received an order. Yes. And the Third Circuit said in the Cassidy case that the challenge is limited to whether you were given a piece of paper called an expedited removal. What if a random name in the phone book handed you a piece of paper with your name on it, said, here's a removal? Challenge that under E2? So I think that would be a closer question that we have here, and I think that's the issue that. So how is that different than an order signed by someone who is not properly appointed? Both of them have zero power to issue the order. So I think section 1252E5 says again that the question is a factual question of whether you were given a piece of paper called an expedited. You just said, you know, it might not count if it was some random person off the street who gave you the order, signed the order. I'm just, I mean, I agree with you. Clearly, that would not count as an order. So how is this different? I think the problem with reading any authority to challenge the way in which the order was issued or any aspect of the process of issuing the order as part of what Congress was reserving in section 1252E2B means that the limits on jurisdiction and channeling of claims in section 1252E3. So it's clear that Congress intended in section 1252E3 that to be the place where the way in which the order was issued. So for this particular habeas petitioner, when could he have filed a habeas petition challenging the appointment of the person who issued it? He could not. So in order to challenge the process by which the order was issued or the authority, constitutional authority of the immigration officers that issued these expedited removal orders, that sort of claim is a challenge to the system by which the orders are issued. Now it needs to be brought within 60 days of the process. Section 1225E itself. There's some stuff in your brief that says, you know, he could have filed a habeas petition while he was in custody before he got the final order. But I take what you're saying now. And I think I probably agree with you to be, if he could have filed a habeas petition while he was in custody before he got the appointment of the person who is going to issue the order. That's correct. So there's two ways in which this case would be resolved, I think. There is a custody requirement in section 1252E2. There has to be some reason that Congress used habeas corpus proceedings in that provision. Language of the opening language of section E2 and E3 is nearly identical, except in E2, Congress says that judicial review of the determination under section 1225E is available in habeas corpus proceedings. And then the immediate, immediately following session, it says judicial review of determination under section 1225B and its implementation is available in action. Certainly there are other differences between habeas proceedings and other actions in federal court, but I don't think any of them explain why Congress would have specifically chosen to limit E2 to habeas. Imagine that E3 didn't exist, and I think that this challenge could be brought under E2 if the timing was right. When could he have filed that petition? I'm not sure I understand the question. Say that he could bring a claim under E2. Imagine that I think you can bring a challenge to the appointment of the person who issued the order under E2. No, you don't agree with that. You think it has to happen under E3. Imagine I think it could happen under E2. When could that happen? So a challenge under E2 needs to be brought while the individual is still detained. So in this situation, on these facts, it could never happen. No, so he could have brought a habeas claim while he was still detained. He was well aware that he was in the expedition. But he could have brought it before the final order while he was still... If I'm right about reading E2 this week? Yes, your honor. So you think it would be right? No, he's challenging the appointment of a person who hasn't yet issued the order. Well, yeah, I think there's a separate barrier to bring that challenge, even if you can bring a habeas challenge or a challenge to custody under E2. And it may be that this doesn't matter and what I just asked doesn't matter. But why is it the government's policy to not issue the final order, not put it in his hand until he's on the plane? I don't know that there is a policy of doing that. I would say that in this case, the timeline was that he came in, he was detained at the airport, and he raised a fear of persecution. And there's a process under the expedited statute that allows that process to play out. You get an assume it's the practice. This happens to everybody in this situation, at least at O'Hare. Why is that the practice? I don't know that it's a standard practice, your honor. Although I do think anecdotally, it does often happen close to removal. You know why? But I think that the idea of the expedited statute, if this court is held and the Supreme Court is held, is to quickly remove individuals once it's been determined that they can't raise a credible fear of persecution or asylum. So it's often close to when these people are quickly removed once they have a final expedited removal order. So it's often very close in time to when they receive the order. I think it's interesting the government suggests that this type of appointments clause could fit under E3 if it were brought within the 60 days. Because the regulation here says a number of different types of officials can serve as immigration officers. And as I read the regulation, some of those officials are officers of the United States, you know. It's confirmed by the Senate, appointed by the President. So how could a person bring an appointments clause challenge within 60 days, not knowing whether their removal order would be signed by someone who was in fact an officer of the United States or by someone who was not an officer of the United States? I mean, how could they in fact challenge that until it was applied to them? Well, I think the statute 1225B contemplates that immigration officers will sign these orders. There's nothing in that statute that can be read to require appointment of individuals. It's long been the practice. Well, it may be that the appointments clause challenge fails on the merits. But the government's position in its brief seems to be that that type of challenge would be appropriate as a challenge to the system. I'm just not sure how it fits under E3 at all. So I think it would be a challenge to the system that permits unappointed immigration officers to issue these orders, which has been a practice that's existed. You wouldn't necessarily be able to raise such a challenge until you knew whether an officer or a non-officer was signing your removal order. Like the system or the regulation would not be facially invalid on appointments clause grounds. It might end up being, you know, invalid as applied to a person, but not facial. Well, I think that there were a number of, obviously a number of expedited removal orders issued in the first 60 days after Section 1225B was passed. Those individuals could have raised an appointments clause claim or challenged the statute. And we know that part of the limits on the 60-day limit in Section 1225E3 was in place because Congress viewed this expedited removal system as very important as a process for dealing with a large number of individuals who arrived from the United States. So it wanted any challenge to the system quickly resolved and resolved in a consolidated way. Congress could have avoided E3 review by just waiting 60 days before they reported the first person? So this part is held in the MMP case that that 60-day limit is jurisdictional. So a claim has to be brought within 60 days of when the policy first went into place. So that's not the allegation of what happened in this case. I'm just very skeptical that an appointments clause challenge is a challenge to the system. I mean, it may be that the government prevails for other reasons, but this idea that an appointments clause challenge, which affects someone's individual rights, arguably is a challenge to the system seems like a poor fit. Well, I would say just generally, Your Honor, I think it's helpful to look at the legislative history here. And I think that it's hard to read the legislative history and what Congress was doing in Act N to read it to Congress to be intending for there to be wide review or lots of opportunities for judicial review related to expedited removal. I mean, the fact that you can't be under A3 doesn't mean that you get review of an appointments clause challenge under E2. It's just that you might not be able to get it under E3. Yes, Your Honor. And if you could raise that habeas challenge under Session E2, those challenges obviously arise when an individual is dealing with their individual circumstances. So when they're detained, they can be raised anywhere in the country. There aren't the venue limitations in E2 that there are in E3. So it would eliminate Congress's intent to consolidate and quickly resolve claims in Session E3. Individuals could just reframe any claim so the process by which their order is issued as a habeas claim, raise it at any time. Other questions? No. Thank you. To pick up on the discussion that the Court just had on the interaction between 1252 E3 and 1252 E2, Judge Rao, I believe, is correct that this is not a challenge to any of the subjects listed in E3. E3 is not about anything that might have broader consequences for the statute. It's specifically the constitutionality of the statute or the constitutionality or lawfulness of any regulation implementing it. Not a word of the statute or any 1225 regulations needs to change. IAM takes all of those to be a given. And if an appointed officer had done exactly what these unappointed employees had done, there would be no claim. IAM, of course, thinks they wouldn't have made the same errors, but that's not a claim he can review because 1252 E2 is still limited to those three very narrow heads of jurisdiction. And that, I think, takes care of much of the concern the government raises for sort of escaping E3's 60-day time limit. Even if an E3 challenge could have or did succeed, that still doesn't allow an E2 challenge unless it fits within one of those three heads of jurisdiction. And as we said, as I explained previously, we believe this is a good example where the petitioners there were arguing their orders of removal were unlawful because they were issued pursuant to the transit bar, a regulation that had already been enjoined at that point. And yet the fact that they were outside the 60-day window meant even that plain unlawfulness was not a claim they could bring. So there's no real floodgates problem of all sorts of claims escaping E3. I would also respond to what my friend at the other table suggested that Congress may didn't intend these claims. Congress doesn't get to set the boundaries of the appointments. The Supreme Court has said repeatedly that neither Congress nor the executive may modify the prohibitions, the rules of the Appointments Clause. It said that immigration decisions such as these may be entrusted to executive officers. Congress can't change the meaning of the Appointments Clause, of course. But can it strip jurisdiction from the right to consider an Appointments Clause challenge? That's really the question here. It's not something Congress has ever tried to do explicitly, and so the court has never reached it. I think it would raise substantial constitutional concerns. As you said, Judge Rao, in your Make the Road dissent, Congress, of course, cannot violate other constitutional provisions in the exercise of its control over jurisdiction. So at an absolute minimum, the idea that if no challenge was brought within a 60-day window in 1997, Congress is immunized for all time future Appointments Clause violations, that raises massive constitutional concerns for our separation of powers. And so to the extent that there's ambiguity, that should be construed in favor of jurisdiction here. If I could, I know I'm over my time for rebuttal, just to pick up on Judge Walker's hypothetical, if I could, because I think that is a useful thought experiment. And I'm happy to stop if the court would prefer it. That the question of whether or not a claim in fact was issued, and that's what E-5 says, not did they hand out a piece of paper, but was an order in fact issued? If I purported to issue an order, there, of course, would be jurisdiction to say, no, the United States didn't authorize that person, no order was issued. If an Congress didn't authorize that person to issue an expedited removal order, no order in fact was issued. Similarly, a CBP agent who had been fired a month before, the courts could say the executive didn't authorize that person to issue an order, and so an order in fact was issued. And then we come to this case. The Constitution does not authorize unappointed employees to issue these orders. And it can't be the regulatory or statutory challenge outranks the Constitution and changes the meaning of E-2B, and suddenly it's no longer a challenge to whether an order in fact was issued. Thank you for the Court's intelligence. Thank you. Case is submitted.
judges: Rao, Walker, Ginsburg